## North American Fertilizer Co. v. Combs et al.

June 25, 1948.

John C. Watts and Wm. F. Clarke for appellant.
Wm. Hill Mackey and Robert J. Denny for appellees.

Opinion of the Court by Judge Siler—Reversing.

Edward C. Combs and Elmo Combs, appellees, sued North American Fertilizer Company, a Louisville manufacturer, the appellant, and Fletcher Taylor, a local seller, for damages growing out of a breach of an implied warranty contained in a verbal contract of sale of fertilizer. A directed verdict having been rendered for Taylor and a judgment for $500 having been rendered against the company on the jury's award of that amount, the company now brings us this appeal.

One of appellant's contentions is that the judgment is reversibly erroneous because the trial court refused to direct a verdict for the company at the conclusion of the evidence.

The appellees are Jessamine County tobacco growers. Their evidence tended to prove that they purchased 4 tons of appellant's "6-8-6" fertilizer in the winter of 1946 from Taylor at a total price of $158.40 for the indicated purpose of using it as a field fertilizer in the growing of their 1946 tobacco; that the "6-8-6" designation indicated contents of 6 parts of nitrogen, 8 parts of phosphoric acid, 6 parts potash; that this particular lot of fertilizer met the requirements of such designation by containing the correct quantities of those chemical elements, yet contained, within its nitrogen component, such an excessive quantity of cyanamid as to have caused a total destruction of appellees' tobacco plants in the tobacco bed where they applied it; that the 1946 season was favorable for plant growth; that the seeds used were good ones; that the bed was prepared in the usual way; that the fertilizer was applied at the rate of 40 pounds to each 100 feet of running distance of the bed, which rate was the customary one for such a use; that "6-8-6" fertilizer was "very extensively" used in Central Kentucky as a tobacco bed fertilizer, especially so during the past 6 years of wartime scarcity; that this same "6-8-6" fertilizer was also used in 1946 as a field fertilizer by one Shirley Hamm, a Jessamine County farmer but not a party to this suit, whose avowal showed that such use on his part had resulted in a destruction of three-fourths of his own tobacco where applied.

Appellant's evidence, on the other hand, tended to prove that this "6-8-6" fertilizer was sold primarily

for field cultivation rather than for plant bed cultivation; that appellant sold a "4-12-0" fertilizer or "Tobacco Bed Special" for plant beds; that appellant's "4-12-0" fertilizer contained a smaller quantity of nitrogen and therefore a smaller quantity of cyanamid and that this "4-12-0" fertilizer had been successfully used in plant bed cultivation without any complaint or untoward results whatever in such a use.

The uncontradicted evidence of this trial showed that Taylor bought fertilizer from this company in large lots, paying his own money for same and then re-selling it to his own customers in the ordinary channels of retail trade. Thus, it appears to have been firmly established that Taylor was a common, independent merchandiser or seller rather than anything like an agent for the company.

Did the appellees produce sufficient evidence on this trial to justify the court's submission of their case to a jury for its verdict on the question of whether this manufacturer breached any implied warranty contained in this verbal contract of sale made by Taylor, the seller, to Combs, the buyer?

The manufacturer's express warranty in this instance was, we believe, that its fertilizer contained 6 parts nitrogen and 8 parts phosphoric acid and 6 parts potash. All the evidence proved that this fertilizer had those contents. In addition to that express warranty, this manufacturer's implied warranty was to the effect that this product was a fit fertilizer suitable to an ordinary use as such. But the appellees did not sue for any damages resulting to them from a breach of an implied warranty as to any ordinary use of this manufacturer's fertilizer. Rather, they sued for damages resulting to them from a breach of an implied warranty as to a special use of such fertilizer.

The appellees seized upon the remedy of a breach of an implied warranty by the manufacturer, but such remedy was not based on the theory that the product was an unfit fertilizer unsuited to an ordinary use as such. The adopted remedy was based on the theory that the product was an unfit fertilizer unsuited to a special use, viz., upon tobacco beds. Elmo Combs had indicated to Taylor that the product was to be used as a field fer-

tilizer and had then used it as a bed fertilizer. Being in that position, appellees sued Taylor and this manufacturer on an implied warranty growing out of a "usage of trade," viz., the somewhat common use in Central Kentucky of "6-8-6" as a bed fertilizer. Apparently, appellees based their suit on the following language of the Uniform Sales Act as written in KRS 361.150:

"Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

    *     *     *     *     *     *

"(5) An implied warranty or condition as to the quality or fitness for a particular purpose may be annexed by the usage of trade."

Our interpretation of the meaning of KRS 361.150, quoted above, is that a contract of sale, whether verbal or written, may carry an implied warranty by the seller to the effect that the merchandise sold is fit for some special use, provided such special use is lawful and has been established by a general habit or custom of the using public. Now this sale from Taylor, the seller, to Combs, the buyer, would have carried an implied warranty by Taylor, based on "usage of trade," to the effect that this "6-8-6" product was fit for special use on tobacco beds, except for the fact that Elmo Combs told Taylor he was purchasing field fertilizer. But a cause of action on an implied warranty based on a usage of trade under KRS 361.150 does not, according to our view, extend beyond the seller so as to include the manufacturer. We do not believe that a manufacturer, who might be in Louisville or Kalamazoo or Timbuktu, should be charged with an implied warranty growing out of custom or trade usage, which might be one thing in Central Kentucky, a somewhat different thing in Western Kentucky, an entirely different thing in Virginia. We believe that the implied warranty of usage of trade is the warranty of a seller only. A manufacturer, as we have indicated, may give an express warranty, such as a warranty of contents, which no witness said was breached in this case, or it may give an implied warranty, such as a warranty of general fitness for com-

monly recognized use, which was not at all the basis for this suit by these appellees.

The Uniform Sales Act seems to incorporate a declaration of the rights and remedies existing between sellers and buyers rather than between manufacturers and consumers. While this company was a seller as to Taylor, yet Taylor alone was a seller as to Combs. There was no privity existing between this company, the manufacturer up in Louisville, and Combs, the buyer down in Jessamine County, except that privity springing from a warranty that this product had the specified component parts and a further warranty that this product was fit for the common usage of the ordinary fertilizer.

Wherefore, for the reason explained, a verdict should have been directed as to the appellant on *the basis of all the evidence produced on this trial.

The judgment is reversed.