C. D. HERME, Inc., Appellant,

v.

R. C. TWAY COMPANY, Inc., d/b/a Kentucky Manufacturing Company, Appellee.

Court of Appeals of Kentucky.

June 22, 1956.

Rehearing Denied Nov. 16, 1956.

Armer H. Mahan, Louisville, for appellant.

Charles I. Dawson, Louisville, for appellee.

CULLEN, Commissioner.

The question on this appeal concerns the tort liability of the manufacturer of an article, to an ultimate purchaser of the article through an independent dealer, for

damages to property resulting from a defect in the article.

C. D. Herme, Inc., purchased from an independent dealer a semi-trailer manufactured by R. C. Tway Company, Inc. The first time the semi-trailer was put in use the king-pin constituting the main connection between the semi-trailer and the tractor broke, causing the semi-trailer to come loose and upset in a ditch, with resulting damage of a substantial nature to the semi-trailer and its cargo. The Herme Company sued the Tway Company for damages, alleging that the king-pin was made of defective steel and that the defect could have been discovered by tests made in the exercise of reasonable care.

Upon trial before a jury, the evidence for the plaintiff tended to show that the king-pin was of defective material, and that certain chemical or physical tests would have disclosed the defect. However, there was no showing that the defendant actually knew of the defect or that the defect was so obvious that knowledge would be presumed. At the close of the plaintiff's evidence the court directed a verdict for the defendant, and from the judgment upon that verdict the plaintiff has appealed.

The leading case in Kentucky, on the question of the tort liability of a manufacturer of an article, to a person with whom he has no contractual relation, for damages resulting from a defect in the article, is Olds Motor Works v. Shaffer, 145 Ky. 616, 140 S.W. 1047, 37 L.R.A.,N.S., 560, decided in 1911. There the Court reconsidered and reaffirmed the rule announced in a number of earlier Kentucky cases, that as concerns articles not inherently or intrinsically dangerous, but which by reason of a defect are imminently dangerous, the manufacturer is not liable unless he has actual knowledge of the defect or it is so obvious that his knowledge will be presumed. There is no contention here that the semi-trailer falls in the inherently or intrinsically dangerous category.

In Payton's Adm'r v. Childers' Electric Co., 228 Ky. 44, 14 S.W.2d 208, there was some indication of an intent of the Court to broaden the basis of liability and to hold the manufacturer liable for ordinary negligence in the manufacture of an article. The attitude of the Court is indicated by the following two quotations from the Payton case, 14 S.W.2d 208, at pages 209 and 210:

"The early cases limited this exception to things in their nature destructive, such as poison, explosives, and deadly weapons, but the tendency recently of the great majority of the courts has been to extend this exception to include any article imminently dangerous, whether inherently so or not, *and we think the exception as extended is sound in principle.*" (Our emphasis.)

"The rule applicable to the instant case and sustained by the weight of authority is that the manufacturer or installer of an article which is not inherently dangerous, but which by reason of *negligent* construction, is manifestly dangerous when put to the use for which it is intended, is liable to any person who suffers an injury therefrom, which injury might have been *reasonably anticipated.* * * *" (Our emphasis.)

There seems to be no valid reason arising from considerations of public policy or otherwise, why a manufacturer's tort liability should not be based upon the ordinary principles of the law of negligence. This means simply that a manufacturer should be required to exercise reasonable care to avoid foreseeable injury. There is no reason to retain the old concepts of inherently, intrinsically or imminently dangerous articles, because the law of negligence contemplates that the care shall be commensurate with the risk involved. As stated in the Restatement of the Law of Torts, Volume II, Negligence, Sec. 395, Comment a., p. 1074:

"* * * the precaution necessary to comply with the standard of reasonable care varies with the danger involved. Consequently the character of harm likely to result from the failure to exercise care in manufacture affects the question as to what is reasonable care. It is reasonable to require those who make or assemble automobiles to subject the raw material, or parts, procured even from reputable manufacturers, to inspections or tests which it would be obviously unreasonable to require of a product which, although defective, is unlikely to cause more than some comparatively slight, though still substantial, harm to those who use it. * *"

▮ The ancient so-called "general rule" of the manufacturer's non-liability for negligence to persons with whom he has no contractual relation, followed by this Court in the Olds Motor case, has been abandoned by substantially all modern authorities. See Annotation, 164 A.L.R. 569. Upon reconsideration, we now determine also to abandon it, and we hereby expressly overrule the Olds Motor case.

▮ We think the proper rule is as stated in the Restatement of the Law of Torts, Sec. 395:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in the manner and for a purpose for which it is manufactured."

▮ Although the *duty* is stated in terms of the foreseeability of *bodily harm*, we think that if the duty has been violated, the mere fact that the actual injury in the particular case happens to be to *property* only, does not relieve the offender from liability. See Annotation, 164 A.L.R. 569, at page 593.

Having determined that liability should be based upon the failure to exercise "reasonable care," the questions remain as to what is the standard or measure of care, and what must the plaintiff prove in order to make out a prima facie case?

In the Restatement of the Law of Torts, Sec. 395, Comment (c), (4), it is stated that the duty is to make such inspections and tests during the course of manufacture and after the article is completed as the manufacturer should recognize as "reasonably necessary to secure production of a safe article." As to the duty to make inspections and tests, see also Annotation, 156 A.L.R. 479.

▮ As we conceive it, the reasonableness of the care has relation to the accomplishment of the end to be achieved, namely, a reasonably safe product. This in turn has relation to the risk involved if the product is not safe. The test is not what other manufacturers are doing, or what is customary in the trade or industry. Zesch v. Abrasive Co., 353 Mo. 558, 183 S.W.2d 140, 156 A.L.R. 469; Marsh Wood Products Co. v. Babcock & Wilcox Co., 207 Wis. 209, 240 N.W. 392; Texas & Pac. Ry. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905. Prosser says:

"Even an entire industry, by adopting careless methods to save time and effort or money, cannot be permitted to set its own uncontrolled standards. And if the only test is to be what has been done before, no industry will have any great incentive to make progress in the direction of safety." Prosser, Torts, First Edition, Sec. 37.

▮ It would seem that ordinarily the question of whether reasonable care has

been exercised will be for the jury, to be answered in accordance with the risk of danger involved, the availability of suitable safety methods, and the practicality and economic feasibility of employing methods designed to insure a safe product.

As concerns the quantum of proof required of the plaintiff, we address our consideration to the proof actually presented by the plaintiff in the case before us. He introduced suitable proof of the existence of a defect; that the defect caused damage to him in the normal use of the product; that the defect existed at the time of manufacture; and that there were available tests by which the defect could have been discovered by the manufacturer. Without deciding whether any less proof would be sufficient, we have no hesitancy in concluding that this was sufficient proof to make out a prima facie case.

The question then arises as to what defense is available to the manufacturer. Aside from contradicting the plaintiff's evidence, it would seem that his defense must consist of proof that the tests and inspections actually employed by him were such as would reasonably be calculated to guard against harmful defects, and that more careful tests or inspections would not be practicable or economically feasible in relation to the risk of danger involved. In other words, his defense must be that he did exercise reasonable care under the circumstances.

It is our opinion that the trial court erred in directing a verdict for the defendant.

It should be stated that although the accident here involved occurred in Iowa, neither party has pleaded or proved the Iowa law. See Aetna Freight Lines v. R. C. Tway Co., Ky., —— S.W.2d ——. Accordingly, we have assumed that the Iowa law is the same as that of Kentucky.

A further question is involved in the case, that being whether the plaintiff is the real party in interest. The plaintiff sued for damage to the semi-trailer, and for loss of its use; also for damage to the cargo of eggs which the semi-trailer was carrying at the time of the accident.

As concerns the eggs, the plaintiff was seeking to recover the sum of $926 which the plaintiff had paid in damages to the owner of the eggs. The answer of the defendant alleged that the plaintiff had been fully reimbursed for this loss by the Aetna Insurance Company, under an insurance policy, and had executed an assignment of the entire claim to the Aetna company. A demurrer to the answer was sustained.

Under the facts alleged, the entire cause of action for damage to the eggs was assigned to the insurance company. Accordingly, the insurance company became the real party in interest as to this claim, and the Herme Company was not entitled to sue on the claim. Works v. Winkle, 314 Ky. 91, 234 S.W.2d 312. The court erred, therefore, in sustaining the demurrer to the answer with respect to this claim.

The answer alleged that the plaintiff had executed an assignment to the Insurance Company of North America of the entire claim for damages to the semi-trailer. However, taking the pleadings as a whole, it appears that the insurance policy covering the semi-trailer was a $500 deductible policy, and that the assignment was not intended to include the Herme Company's cause of action for the first $500 of the damage to the semi-trailer. Thus the situation is exactly the same as it was in Louisville & N. R. Co. v. Mack Mfg. Corp., Ky., 269 S.W.2d 707, wherein this Court laid down certain rules applicable to the bringing of actions in cases of partial assignments. Under the Mack decision, the court should have treated the defendant's pleadings as a motion to make the insurance company a party plaintiff. Upon remand of the case the court

will require the insurance company to be made a party and assert its claim.

The judgment is reversed, for proceedings in conformity with this opinion.

Judges CAMMACK, HOGG and SIMS dissent from so much of the opinion as relates to the manufacturer's liability for negligence. Judges CAMMACK and HOGG are of the opinion that the change in the law made by this opinion should have prospective operation only.

Judge SIMS is of the opinion that the Olds Motor case is sound and should not be overruled.