William J. LANDON, Georgia Reed, Administratrix of the Estate of Janet Lillian McKay, Katherine Landon, and Eva Tippel, Plaintiffs,

v.

NATIONAL BUILDING CORPORATION, Bendix Corporation, Defendants-Appellants,

and

General Motors Corporation, Defendant-Appellee.

Nos. 18953–18956.

United States Court of Appeals
Sixth Circuit.

Oct. 8, 1969.

Victor W. Ewen, Louisville, Ky., for appellant National Building Corp.; John G. Crutchfield, Louisville, Ky., on brief; Jones, Ewen, MacKenzie & Peden, Louisville, Ky., of counsel.

C. Alex Rose, Louisville, Ky., for appellant Bendix Corp.

John A. Fulton, Louisville, Ky., for appellee General Motors Corp.; William D. Grubbs, Louisville, Ky., on brief; Woodward, Hobson & Fulton, Louisville, Ky., of counsel.

Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

This appeal concerns the aftermath of a fatal rear-end collision between a truck and a passenger automobile. Four plaintiffs sued the three named defendants for the death and the injuries which resulted from the accident.

Before trial the three defendants through their insurance companies agreed mutually to settle the claims of the four plaintiffs in the sum of $300,000. Each defendant reserved its denial of liability while contributing $100,000 to the total settlement.

The settlement agreement between the insurance companies called for "reserving the issue of liability and responsibility as between the defendants." It also provided that "upon a final determination of legal responsibility, the responsible party or parties, through its insurers, shall repay to the insurer or insurers of the absolved party or parties the sums paid under the terms hereof with interest at the rate of 5% * * *."

The case was tried before a District Judge and jury in the United States District Court for the Western District of Kentucky, Louisville Division. The facts as developed at trial bore on claims that the accident which killed one person and seriously injured three others resulted from 1) alleged negligent driving on the part of the truck driver, an employee of defendant, National Building Corporation, or 2) brake failure occasioned by improper functioning of the hydrovac booster unit manufactured by defendant, Bendix Corporation, or 3) brake failure occasioned by the failure of the emergency brake or the master brake cylinder on the truck for which, as far as this record is concerned, defendant, General Motors Corporation, had exclusive responsibility.

The accident occurred on October 8, 1965, at a toll collection plaza on the Kentucky Turnpike near Elizabethtown, Kentucky. The injured parties were riding in a small automobile which was stopped at the toll booth to pay the toll when the truck collided with it from the rear, riding over the compact and inflicting the death and injuries referred to above. The toll booth collector testified as follows:

"Q. All right. Now, are you, as a result of your watching this truck come towards you in your position there collecting the toll, able to give us an estimate, a reasonable estimate, on the speed of the truck?

"A. Yes, sir. I estimated it at 50 miles an hour.

"Q. Did it at any time slow down?

"A. Not that I could tell, no, sir.

"Q. What speed was it going at the time this impact occurred with the rear end of the Comet automobile?

"A. I would say 50 miles an hour, or close to it. It was coming right straight at me, and I was—it was—

of course, it looked like it was going mighty fast."

The truck driver, however, testified that he had approached the toll booth at approximately 35 miles an hour until he was 150 to 175 feet away, at which point he had applied the brakes. He found the pedal "hard" but the truck had not slowed down, and he then described applying great pressure on the brakes until the pedal was close to the floor mat without slowing the truck down. The thrust of his testimony was that he could have made a normal stop but for brake failure. But as shown above, there was strong contrary evidence before the jury which heard this case.

Much of the testimony in the case, however, bore on brake failure and what, if anything, occasioned it. Subsequent to this accident the truck was put back in service and there was another occasion when another employee applied the brake and found that the truck did not stop. On examination of the brakes after this episode, the hydrovac unit was disassembled and a foreign object, a small spring, was found in its cylinder. There was expert testimony that this foreign object could have had the effect of maintaining pressure in the brake lines of the truck, thus causing the brakes to be applied while the truck was in operation, heating the drums and lining and causing "brake fade" when the brakes were sought to be applied.

National Building Corporation presented at trial an engineering expert who had examined the truck after the crash and had found reason to believe that there was sediment in the master cylinder which should not have been there. Originally he attributed the brake failure to this.

However, after the discovery of the foreign object in the hydrovac, this expert witness conceded on cross-examination that the hydrovac could have caused the accident and that any contribution from the condition he found

in relation to the master cylinder was purely speculative. There was testimony from which the jury could have found that the hand brake was out of adjustment. The record also established, however, that the hand brake application was too late to be relevant to the crash.

On the basis of this record, the District Judge decided that there was no proof of any manufacturing defect in the truck attributable directly to General Motors. And he instructed the jury as a matter of law to disregard testimony pertaining to any claim of defect in the master cylinder or in the emergency brake. He then submitted the case to the jury on special questions concerning the liability of National Building Corporation and Bendix Corporation, with an instruction that under Kentucky law the jury was to determine the percentages of liability of each defendant, if any. After having prepared the special questions, however, on objection from Bendix, the Judge also submitted to the jury a question pertaining to whether or not there were "other causes" for the accident, and if so, what percentage should be attributed to them. The jury thereupon rendered its verdict, finding that 65% of the fault was attributed to National Building Corporation, 25% to the Bendix Corporation and 10% to "other causes."

In entering judgment, the District Judge distributed the 10% the jury had found attributable to "other causes" proportionately between National Building Corporation and Bendix Corporation, thus allowing General Motors to recoup its entire $100,000. Both National Building Corporation and Bendix appeal.

Both appellants assert that it was reversible error for the Judge to direct General Motors out of the case. National Building Corporation argues that Kentucky has adopted a products liability law of strict liability where the manufacturer is responsible to an injured party for a manufacturing defect, even if the defect is actually attributable to a supplier.

■ This appears to us to be an accurate statement of the law of Kentucky. Dealers Transport Co. v. Battery Distributing Co., 402 S.W.2d 441 (Ky. 1965); Kroger Co. v. Bowman, 411 S.W.2d 339 (Ky.1967). On this score Kentucky law parallels generally accepted products liability law. *See* Henningsen v. Bloomfield Motors, 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960); Restatement, Torts § 402A (1964).

This case, however, is not the normal products liability case. The logic of making a manufacturer liable for the negligence of his suppliers involves both the fact that he has the final opportunity to determine the safety of the entire product for the intended market use and the fixing of responsibility for damage on the one best able to meet it, and (if facts justify) to distribute that responsibility.

In our instant case neither of these reasons for keeping General Motors in the case is applicable. Here, the three defendants had settled the damage claims of the four plaintiffs and by written agreement had determined to try out the issues of "liability and responsibility" as between themselves.

■ It seems to us, as it did to the District Judge, that the agreement under which this case was tried did not require General Motors to carry the responsibility which it would normally have had toward the plaintiffs, since the settlement had removed plaintiffs from the case. We find no error in the District Judge's interpretation of the agreement between the insurers of the three defendants as eliminating the responsibility which General Motors would normally have had to bear for any defect in the hydrovac unit, since Bendix, the manufacturer of the hydrovac, was one of the co-defendants and a party to the agreement.

■ The second major appellate question pertains to whether or not the evidence warrants the District Judge's holding that no jury question was presented as to manufacturing defects directly attributable to General Motors. As we have indicated above, National Building Corporation's direct evidence was negated completely on cross-examination as to any defect in the master cylinder. We find no other testimony from which reasonable men could have found that failure of the master cylinder was a proximate cause of this accident. As to the other claimed defect, it is clear that the hand brake was applied far too late to prevent the accident. We also believe that any contribution which its effective operation might have made toward reduction of damages was, as the District Judge held, purely speculative.

In making the determinations above, we have reviewed the facts from the point most favorable to appellants giving them the benefit of all inferences which the evidence fairly supports. These standards of review we believe to be consistent, whether the applicable law be deemed to be federal—Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); Tennant v. Peoria & Pekin Union Ry., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944); Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963); Lind v. Schenley Industries, Inc., 278 F.2d 79 (3d Cir. 1960); Shirey v. Louisville & Nashville Ry., 327 F.2d 549 (5th Cir. 1964); 5 J. Moore, Federal Practice, ¶ 50.02[1] (2d ed.1968)—or state—Lovas v. General Motors Corp., 212 F.2d 805 (6th Cir. 1954); DeGarmo v. City of Alcoa, 332 F.2d 403 (6th Cir. 1964); Gilreath v. Southern Ry., 323 F.2d 158 (6th Cir. 1963); Sutton v. Combs, 419 S.W.2d 775 (Ky.1967); Johnson v. Vaughn, 370 S.W.2d 591 (Ky. 1963).

■ The third major appellate question, however, pertains to the District Judge's submission of the special question pertaining to "other causes" and his distribution of the 10% attributed by the jury to "other causes" against National Building Corporation and Bendix. We are able to see no way by which this can be legally justified. And,

indeed, as to this 10%, the judgment appears to deprive both National Building Corporation and Bendix of their right to a jury trial.

We believe that the District Judge was in error in submitting the third set of special questions concerning "other causes" to the jury. Further, his assessment of an additional 10% of the settlement ($30,000) (attributed by the jury to "other causes") against National Building Corporation and Bendix was clear error.

The increase of a jury verdict by decision of the trial judge has been held to violate the Seventh Amendment right to a jury trial. Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935). While here the District Court's judgment was entered in response to special questions, the 10% increase in the amounts assessed against National Building Corporation and Bendix was in our view neither compelled by the jury answers nor consistent with them. United Air Lines, Inc. v. Wiener, 335 F.2d 379 (9th Cir.), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964). See also Detroit City Gas Co. v. Syme, 109 F.2d 366 (6th Cir. 1940).

The judgment of the District Court is vacated and the case is remanded for new trial.

Since, however, the court is impressed with the fact that this case has been thoroughly tried to an approximately fair result and without other reversible error, the court will give serious consideration to a motion for rehearing of the judgment entered above if timely filed by appellee General Motors, accompanied by a waiver of claim to recovery from appellants of the 10% of the settlement referred to above, thus allowing the court to consider remand for entry of judgment against appellants National Building Corporation and Bendix of the percentages of the settlement (65% and 25%) as actually found by the jury.