923 F.2d 855
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Drura SCOTT, Plaintiff-Appellant,
v.
STRAN BUILDINGS, National Steel Products Company, AMCA
International Corporation, and Empire Steel, Inc.,
Defendants-Appellees and Third-Party Plaintiffs,
Empire Steel, Inc., Third-Party Defendant.
 No. 90-5039.
 United States Court of Appeals, Sixth Circuit.
 Jan. 16, 1991.
 
 Before MILBURN, BOGGS and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Drura Scott, d/b/a Scott Farms, appeals the district court's grant of summary judgment for defendants-appellees Stran Buildings, National Steel Products Company, and AMCA International Corporation[1] in this diversity action to recover damages sustained from the premature deterioration of two large steel buildings manufactured by Stran. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Scott originally filed this action on September 25, 1985, in the Circuit Court of Henderson County, Kentucky, alleging that the premature deterioration of two large steel buildings "purchased from Empire Steel, Inc., a distributor and agent of defendants ... caused breach of contract, breach of express warranty, breach of implied warranty, breach of warranty [of] fitness for a particular purpose and through [the] doctrine of res ipsa loquitur and nigligence [sic] or strict liability has caused the plaintiff to suffer" loss of use of the buildings and replacement costs. J.A. 16-17. Scott did not name Empire Steel as a defendant.
 
 
 3
 On October 16, 1985, Stran removed the action to the federal district court, and Stran later filed a third-party complaint against Empire. On September 6, 1988, Stran filed a motion for summary judgment which was granted in an order entered October 24, 1989, explained by a memorandum of that same date. The district court dismissed Scott's claims against all defendants and dismissed the third-party complaint as moot. Scott filed a timely motion for reconsideration which the district court denied on December 5, 1989. This timely appeal followed.
 
 B.
 
 4
 Drura Scott, doing business as Scott Farms, bought two 50 feet by 1,000 feet metal buildings directly from Empire Steel, Inc., for the purpose of housing large numbers of cattle. The buildings were manufactured by Stran. Scott Farms took delivery of the buildings and erected the buildings with its own crew. During a light snowfall approximately four to five years after the buildings were erected, large portions of both buildings collapsed. The parties agree that the collapse was the result of corrosion to the buildings which was accelerated in the corrosive environment of confined cattle feeding.
 
 
 5
 When Drura Scott decided to institute a system of confined cattle feeding, he informed his brother and farm manager, Emerson Scott, of his decision and left the details to Emerson Scott. Since Empire Steel was a large and reputable builder and distributor of metal buildings, and had given Drura Scott satisfactory service in the past, Emerson Scott contacted Empire's representative, Earl Roehm.
 
 
 6
 In a deposition, Emerson Scott testified that he essentially gave Roehm the dimensions of the buildings and left the design of the buildings to Empire. Neither Emerson Scott nor Drura Scott had any direct contacts with Stran. In his deposition, Emerson Scott further testified that he was given no oral or written warranties, but later, in an affidavit, Emerson stated that while reviewing some documents he remembered that Roehm had indicated that the buildings were "20-20-20 buildings" meaning that they had a twenty-year life span, a twenty-pound wind load, and a twenty-pound snow load capacity. Emerson's affidavit is corroborated by an affidavit of Roehm.
 
 
 7
 The possibility that Empire was acting as an agent of Stran was explored during depositions of Ed Abel, a regional manager for Stran, and Earl Roehm, the representative of Empire who dealt directly with Scott Farms. Abel classified Empire as a builder and/or dealer of Stran products. Abel acknowledged that Stran's relationship with Empire went back as far as 1965, and Abel characterized Empire as "a large and very good dealer." Abel also acknowledged that Stran periodically offered incentive trips to dealers such as Empire and to their representatives. Stran also periodically paid part of its dealers' advertising costs.
 
 
 8
 Earl Roehm described Empire as a general contractor and metal building dealer for Stran. This meant simply that Empire had a right to sell Stran buildings. Empire had a similar relationship with another comparable manufacturer. According to Roehm, his procedure upon learning of any given job prospect is to first estimate the job, then secure a contract from the customer, and then purchase a building from Stran or the other manufacturer.
 
 
 9
 Although Emerson Scott testified that design of the buildings was left primarily to Empire, Roehm testified that the materials and design were left primarily to Stran. According to Roehm, Empire had no involvement in deciding the materials and design of Scott Farms' buildings other than providing an anchor bolt layout. Roehm did not remember any discussion with Scott Farms about the possibility of premature corrosion other than alerting someone of the need to coat the lower portion of some support columns with a protective coating.
 
 
 10
 Purchase orders and order acknowledgments list Empire Steel as the builder, Emerson Scott, d/b/a Scott Farms, as the "builder's customer" and reflect that the orders were "sold to" Empire Steel to be shipped "(to consignee) Empire Steel, c/o Scott Farms." J.A. 141-142. A purchase order from Scott Lumber, Inc., (a company closely linked to Scott Farms) to Empire Steel specifically requested a "Stran steel type LR building" with dimensions of 50 feet by 1,000 feet. J.A. 97. The record reflects that Scott Lumber, Inc., was billed directly by Empire Steel for the cost of the buildings.
 
 
 11
 The principal issues presented in this appeal are (1) whether the district court correctly held that Kentucky courts would not impose tort liability on the manufacturer of a defective product where the defect results in injury only to the product itself and causes only economic losses without creating an unreasonable danger, and (2) whether the district court correctly held that plaintiff's action in theories of breach of contract and breach of warranty was barred by lack of privity between the plaintiff and Stran.
 
 II.
 A.
 
 12
 We review a district court's grant of summary judgment de novo, by the same standard as the district court employs initially. Hines v. Joy Mfg. Co., 850 F.2d 1146, 1149 (6th Cir.1988); Pinney Dock and Transp. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). Summary judgment is appropriate if, upon viewing all facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party, 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987), the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Although our review of a summary judgment is de novo, "[w]hen summary judgment is granted in a diversity case by a federal district court sitting in the state whose law governs, and the judgment is based upon [the] district court's interpretation of state law, this court 'will defer to the district court's interpretation of state law if it is permissible.' " White v. Turfway Park Racing Ass'n, 909 F.2d 941, ---- (6th Cir.1990) (quoting Hines, 850 F.2d at 1151).
 
 B.
 
 13
 Before deciding the principal issues which we have set forth, we address two preliminary matters. Scott contends that the district court failed to address all the legal theories of recovery presented below. After reading the district court's memorandum carefully in its entirety, we find it clear that the district court held (1) that a cause of action does not lie in tort for mere loss of bargain as opposed to injury from exposure to an unreasonable danger, and (2) that a cause of action does not lie for breach of contract or breach of warranty absent privity. These holdings encompass all the plaintiff's legal theories; therefore, we find no merit in the plaintiff's contention that the district court ignored some of his theories of liability.
 
 
 14
 We also note preliminarily that Scott's reliance upon the theory of res ipsa loquitur is misplaced. Scott had full control of the buildings for several years after they left the manufacturer. It cannot be said that buildings do not corrode absent negligence, and the failure of the buildings was more of a gradual deterioration than an accident. See Sadr v. Hager Beauty School, Inc., 723 S.W.2d 886, 887 (Ky.Ct.App.1987) (explaining elements of res ipsa loquitur ).
 
 C.
 
 15
 We now turn to the more substantial issue of whether Kentucky would allow an action in tort for pure economic loss. For the proposition that Kentucky would allow recovery on the facts presented here, Scott relies primarily upon three cases. See Dealers Transp. Co. v. Battery Distributing Co., 402 S.W.2d 441 (Ky.1966); C.D. Herme, Inc. v. R.C. Tway Co., 294 S.W.2d 534 (Ky.1956); C & S Fuel, Inc. v. Clark Equip. Co., 524 F.Supp. 949 (E.D.Ky.1981). Dealers Transport does not help the plaintiff because in that case the consumer sought recovery for extensive damage to other property caused by a dangerously defective product. 402 S.W.2d at 443-44.
 
 
 16
 Herme helps the plaintiff only a little. In that case the ultimate purchaser of a semi-trailer, who purchased through an independent dealer, was allowed to recover against the manufacturer of the trailer for damages to the trailer and its cargo caused by a defective "king-pin" which caused the trailer to come unhitched from the tractor and overturn in a ditch. Although the court allowed recovery for the damage to the defective product, recovery was based on the duty to avoid foreseeable bodily harm. Herme, 294 S.W.2d at 537.
 
 
 17
 C & S Fuel allowed the remote purchaser of a large tractor-shovel to recover against the manufacturer of the machine for losses sustained when it was destroyed by an explosive fire propagated within the machine. In that case, the district court was almost persuaded by the "defendant's forceful policy arguments" against a cause of action in tort; however, because of another judgment against the same defendant in the Western District of Kentucky, the court was compelled by the "superseding policy of uniform application of the law" to allow recovery. C & S Fuel, 524 F.Supp. at 952.
 
 
 18
 Stran argues that the "explosive" fire in C & S Fuel and the semi-trailer loosed on other traffic in Herme should be distinguished from the slowly rusting barns in this case. Stran bolsters its position by noting that Herme is an old statement of Kentucky law and by citing several recent cases from other jurisdictions which have refused to allow an action in tort for purely economic loss.[2]
 
 
 19
 The most recent and most persuasive of the cases Stran cites is East River S.S. Corp. v. Transamerican Delaval, Inc., 476 U.S. 858 (1986). See also Miller v. United States Steel Corp., 902 F.2d 573 (7th Cir.1990) (holding that buyers of metal building panels which suffered premature corrosion could not use tort law to recover cost of replacing the panels). In East River the Supreme Court, exercising its admiralty jurisdiction, held "that a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." 476 U.S. at 871. The Court set out a number of reasons, backed by policy considerations, why, "[w]hen a product injures only itself the reasons for imposing a tort duty are weak and those for leaving a party to its contractual remedies are strong." Id.
 
 
 20
 We realize that East River is not binding on state courts; however, East River is persuasive enough authority that it can be expected to influence the state courts. See Aloe Coal Co. v. Clark Equipment Co., 816 F.2d 110, 117 (3d Cir.1987) (holding that Supreme Court's analysis in East River is so persuasive it would be followed by Pennsylvania court). Since Kentucky has generally been willing to follow the advancing developments of products liability law as stated by the majority view, see, e.g., Dealers Transport, 402 S.W.2d at 446 (adopting Restatement view of strict liability), and since East River adopts and adds credence to the majority view, we believe that Kentucky would follow the East River approach and deny an action in tort on these facts.
 
 
 21
 This is especially true since Herme is an old case, and since both Herme and C & S Fuel are distinguishable by the fact that those cases presented a danger to persons and/or other property whereas the complaint in this case did not allege danger to persons or other property. Our conclusion is bolstered by the district judge's holding given the fact that we accord deference to a district judge's interpretation of state law in a diversity case. White v. Turfway Park, 909 F.2d at ----.
 
 D.
 
 22
 We now turn to the question of whether or not Scott could recover on a contract or breach of warranty theory. The district court correctly held that Kentucky requires privity of contract for an action based on breach of contract or breach of warranty. Williams v. Fulmer, 695 S.W.2d 411, 413 (Ky.1985). In Williams , the remote downstream purchaser of a motorcycle helmet who was killed because of an alleged defect in the helmet was denied recovery against the manufacturer because of a lack of privity. Id. at 414. Williams was an especially sympathetic case for recovery, but the court felt bound by Kentucky's statutory pronouncement relating to privity and held that "with breach of warranty as expressed through KRS 355.2-318, beneficiaries of implied warranties are limited to the purchaser and to 'any natural person who is in the family or household of [the] buyer or who is a guest in his home.' "[3] Id. Although Williams did not specifically deal with the case of a manufacturer's liability to the purchaser from a dealer, the rationale relied on the principle that "[i]f liability is based on sale of the product, it can be extended beyond those persons in privity of contract only by some provision of the U.C.C. as adopted in Kentucky." Id. at 413. Williams is consistent with the majority view, at least insofar as it applies to economic loss cases. See White & Summers, Uniform Commercial Code Sec. 11-5, at 407 (2d ed.1984).
 
 
 23
 Scott argues that for the purposes of summary judgment there was privity because a jury could have found that a contract existed between Scott Farms and Stran. We disagree. The record demonstrates, without question, that Scott Farms dealt directly with Empire and not with Stran. Thus, no contract arose and no privity existed between Scott and Stran.
 
 E.
 
 24
 Neither do we find sufficient evidence to create a jury question that Empire was acting as Stran's agent. Under Kentucky law, an agency relationship is not established merely by showing that the immediate seller is a dealer of the manufacturer's product. See Cline v. Allis-Chalmers Corp., 690 S.W.2d 764 (Ky.Ct.App.1985).
 
 III.
 
 25
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 26
 BOGGS, Circuit Judge, concurring in part and dissenting in part.
 
 
 27
 I write separately because I believe the court's opinion makes a wrong choice as to Kentucky law. This opinion holds that Kentucky would limit the application of Section 402A of the Restatement (Second) of Torts, which Kentucky has explicitly adopted, Dealer's Transport v. Battery Distributing Co., 402 S.W.2d 441 (Ky.1966), so that it would not apply to cases where the only loss was through damage to the defectively designed object itself. I see no indication that Kentucky would so hold. Even though I believe it would be wiser policy if it did so hold, I do not believe that choice is ours to make. I therefore dissent from Section II-C.
 
 
 28
 In addition, I concur separately in part II-D. While I agree that Kentucky requires privity, the privity required is not that discussed in the opinion, privity between injured party and seller. Instead, it is privity between buyer and manufacturer, which does not exist here.
 
 
 29
 * Section 402A makes a deliberate policy choice to hold manufacturers strictly liable to consumers for design defects, even in cases where there is no question that manufacturers, dealers and buyers could choose to allocate risk among themselves. Section 402A represents a decision that such allocation should not be allowed. This decision is not always consistently followed, nor is it clearly right. Many courts have limited the application of Sec. 402A in the commercial world, where there is no question that parties can decide how to allocate risk. See Purvis v. Consolidated Energy Products Co., 674 F.2d 217 (4th Cir.1982); Scandinavian Airlines System v. United Aircraft Corp., 601 F.2d 425 (9th Cir.1970); Ebasco Services, Inc. v. Pennsylvania Power & Light, 460 F.Supp. 163 (E.D.Pa.1978); Kaiser Steel Corp. v. Westinghouse Electric Corp., 55 Cal.App.3d 737, 127 Cal.Rptr. 838 (1976). It would also be both more efficient and more consistent with free enterprise principles to allow parties to make their own allocation. The area of "economic loss" (damage only to the defective product) is different in no material respect from damage or loss generally. The ability of parties to allocate risk is no more and no less than for other damages or losses. The amount of consumer danger is not really different. Since a farm building that collapses has the same defect regardless of the extent of the damage, the degree of care in construction exercised by manufacturers will be no different as a result of this ruling.
 
 
 30
 However, Kentucky applies Sec. 402A in its full rigor. The cases discussed by the court (Herme, C & S, and Dealer's Transport) show not the slightest indication of the distinction made here between "pure" economic loss and economic loss involving the threat of harm to persons or other property. At most, they can be distinguished on other grounds: C & S Fuel is a Federal case guessing at Kentucky law, Herme was decided before Kentucky adopted Sec. 402A, and Dealer's Transport only adopted Sec. 402A. The majority view of Sec. 402A distinguishes only between "pure" economic loss and personal injury. The Supreme Court's adoption of the majority view in East River, while clearly distinguishing between "economic losses" and other losses, is not so compelling as to indicate that a state that has adopted Sec. 402A as written would make that same distinction.
 
 
 31
 Finally, it is important to note that this accident is not significantly different from the accidents in the cases cited. When large farm buildings collapse, they could easily collapse on people or livestock. Only good fortune (here no people or livestock were hurt) distinguishes this case from the accidents in C & S and Herme. It is true, as the court notes, that plaintiffs apparently did not plead explicitly that the building was dangerous to other property and people, but that is a very straightforward implication of the complaint.[1]
 
 
 32
 Thus, I see no reason to divine that Kentucky would rule as the court here has, and I would adhere to Kentucky's chosen rule, that of unmodified Sec. 402A.
 
 II
 
 33
 While the court's discussion of the Fulmer case is accurate as far as it goes, it does not really cover our situation. In Fulmer, the injured party never bought the product. She simply received it from the actual buyer. Fulmer therefore only interprets Kentucky law regarding "horizontal" privity, that is, whether privity is necessary between a seller and an injured person who receives a good without buying it from the seller. The law interpreted by Fulmer, KRS 355.2-318, is expressly neutral as regards any requirement of "vertical" privity where an injured buyer sues the manufacturer, not the party who sold to the buyer. In our case, the injured party was the buyer; however, he is suing the manufacturer, rather than the seller. The court correctly points out that Scott never dealt with Stran and never bought anything from Stran. Thus, in the absence of any indication of how Kentucky stands on "vertical" privity, I believe that the reason no warranty can flow from Stran to Scott is that Stran is not a "seller" under 2-313, 2-314 and 2-315 of the U.C.C., because Stran did not sell to Scott and "seller" is defined in the U.C.C. as "a person who sells or contracts to sell a good." KRS 355.2-103. A "seller" cannot include a remote manufacturer like Stran without holding that "vertical" privity is never required. Kentucky has not made this decision, and we should not make it for Kentucky. I thus concur in the result upholding the district court's dismissal of this part of the complaint.
 
 
 
 [1]
 Stran Buildings is an unincorporated division of AMCA International Corporation. National Steel Products Company was the owner of Stran Buildings at all times relevant to this action and sold the assets of Stran Buildings to AMCA International Corporation in 1983. Hereinafter the defendants-appellees are collectively referred to as "Stran."
 
 
 [2]
 For an extensive list of cases that have held that economic losses are not recoverable under claims sounding in tort, see Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp., 626 F.2d 280, 287 n. 13 (3d Cir.1980)
 
 
 [3]
 Dealers Transport Co. v. Battery Distributing Co., 402 S.W.2d 441 (Ky.1966), is not to the contrary. In Dealers Transport, the court observed that it "would do no judicial violence to hold that the law in [Kentucky] is that privity is not a prerequisite to maintenance of an action for breach of implied warranty in products liability cases"; however, the court avoided the need to eliminate a privity requirement by adopting the "view expressed in Section 402A of the ... Restatement of the Law of Torts [i.e., strict liability]." Id. at 446. As explained in Williams, the cause of action adopted in Dealers Transport, strict liability for physical harm, is "not to be confused with the cause of action for breach of warranty against a commercial seller as set out in the U.C.C." 695 S.W.2d at 413
 
 
 [1]
 I note that the complaint in the record contains only paragraphs 1-6 and 11-13. There is no proof in the record that any other paragraphs of the complaint ever existed