[Civ. No. 20562. First Dist., Div. Two. Aug. 12, 1963.]

MARTHA FAUCETTE, Plaintiff and Respondent, v. LUCKY STORES, INC., Defendant, Cross-complainant and Appellant; COCA-COLA COMPANY, Defendant, Cross-defendant and Appellant.

198

Ropers, Majeski & Phelps and Cyril Viadro for Defendant, Cross-complainant and Appellant.

Carr, McClellan, Ingersoll & Thompson, Luther M. Carr and David C. Carr for Defendant, Cross-defendant and Appellant.

William A. Sullivan for Plaintiff and Respondent.

AGEE, J.—Plaintiff bought a six-pack cardboard carton of ''king-size'' bottles of Coca-Cola at a Burlingame unit of Lucky Stores on June 29, 1959, serving herself out of an open refrigerated cooler box, and while carrying the carton of six bottles up the driveway at her daughter's apartment several blocks away the bottom of the carton split down the folding seam lengthwise along the bottom and the bottles fell to the pavement. This caused two of the bottles to break and glass from one of them lacerated her leg.

Plaintiff filed suit and proceeded to trial against the bottler, Coca-Cola Bottling Company of San Mateo, a corporation, and the retailer, Lucky Stores, Inc., a corporation. Her complaint alleged negligence and breach of implied warranty by

both defendants. The trial court granted a nonsuit on the issue of warranty as between plaintiff and Coca-Cola. The correctness of this ruling is not an issue herein, since plaintiff has not appealed.

The trial court submitted the plaintiff's case to the jury under instructions which permitted it to return (1) a verdict against either or both of the two defendants on the theory of negligence or (2) a verdict against Lucky Stores on the theory of implied warranty of fitness of the carton for use as a container in which to carry bottles.

The jury returned a verdict of $2,100 against Lucky Stores, which verdict contained an express finding therein that it was based "on the theory of breach of implied warranty." The jury did not use the form of verdict which provided for a recovery in favor of plaintiff and against Lucky Stores "on the theory of negligence." Lucky was thus impliedly absolved from negligence. By not returning a verdict in favor of plaintiff as against Coca-Cola, the jury impliedly found that it also was not negligent.

Lucky has appealed from the judgment entered upon the verdict against it but states that "we have concluded that that appeal is probably without merit." We agree with this conclusion. Coca-Cola does likewise in its closing brief.

Lucky cross-complained against Coca-Cola, seeking reimbursement in the event that liability was imposed upon it by plaintiff under the theory of implied warranty. A verdict in the same amount ($2,100) was returned on the cross-complaint and Coca-Cola has appealed from the judgment entered thereon.

In order to make Coca-Cola liable to it for breach of warranty, Lucky (the buyer) was required to give notice of such breach to Coca-Cola (the seller). (Civ. Code, § 1769.)

It was also necessary for Lucky Stores to plead and prove the giving of such notice (*Vogel* v. *Thrifty Drug Co.,* 43 Cal.2d 184, 188 [272 P.2d 1]). The cross-complaint contains no such allegation. And it is not clear from the pretrial order whether the issue as to the giving of such notice is included therein. Among the contentions listed in the order as being made by Coca-Cola are the following: "1. Admits furnished Coca Cola and carton to Lucky. . . . 4. Denies warranty and notice of breach. 5. Denies allegations of cross-complaint."

However, it is unnecessary for us to resolve this ambiguity. The case was tried upon the theory that the giving of such

notice was an issue in dispute and the evidence relating thereto was admitted *without objection*. As stated by our Supreme Court in the recent case of *Collison* v. *Thomas* (1961) 55 Cal.2d 490, 498 [11 Cal.Rptr. 555, 360 P.2d 51]: " 'A party cannot permit an issue to be litigated and on appeal escape the consequences by claiming that such issue was not pleaded.' [Citations.] While the pretrial order now frames the issues remaining in dispute [citation] and in this respect supersedes the pleading [citation], the quoted rule should be equally applicable however the issues are framed."

Coca-Cola also contends that Lucky did not prove that it gave the notice required by section 1769 of the Civil Code. This section provides that, if "the buyer [Lucky] fails to give notice to the seller [Coca-Cola] of the breach of . . . warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

Such notice was given by Lucky to Coca-Cola in a letter dated July 10, 1959. It was misdirected to the "Coca-Cola Bottling Company" in Oakland, California, but was forwarded from there to appellant "Coca-Cola Bottling Company of San Mateo," who received it not later than July 16, 1959. This was 17 days after the accident. The jury was instructed on the "reasonable time" provision in section 1769 and, by necessary implication from its verdict on Lucky's cross-complaint, resolved the timeliness of the notice in favor of Lucky. This issue was properly left to the jury for its determination. (43 Cal.Jur.2d, Sales, p. 384.)

Such a misdirected notice is effective if actually received by the seller, in the same manner as though addressed correctly. (*Powers* v. *John C. MacInnes, Inc.*, 343 Mass. 773 [178 N.E.2d 29].)

The record does not contain the letter of July 10, 1959, but it does support the inference that Coca-Cola was sufficiently notified therein of Lucky's claim of breach of warranty.

No particular form of notice is required. It need merely apprise the seller that the buyer intends to look to him for damages. (*Whitfield* v. *Jessup* (1948) 31 Cal.2d 826 [193 P.2d 1]; *Jones* v. *Burgermeister Brewing Corp.* (1961) 198 Cal.App.2d 198 [18 Cal.Rptr. 311].)

Coca-Cola's president testified, by way of deposition, that he wrote a letter on July 16, 1959, to Coca-Cola Bottlers Association, Atlanta, Georgia, "in connection with the Martha V. Faucette and Lucky Stores No. 56, Burlingame,"

He stated therein that he was "enclosing the following original letter dated July 10, 1959, together with customer's report of accident, addressed to the Coca-Cola Bottling Company in Oakland, from Lucky Stores, . . ."

Immediately thereafter in his testimony, the president gave the following answer to the following question: "Q. Your office had knowledge of *this claim* of product's liability in July of 1959, is that correct? A. Yes." (Italics ours.)

He obviously was referring to the knowledge obtained from the notice of claim sent by Lucky to Coca-Cola on July 10, 1959. Coca-Cola never admitted receiving *any* notice of claim from plaintiff.

In this respect, plaintiff relied upon a letter written by her attorney to Coca-Cola on July *20*, 1959. This letter was misdirected to "Coca-Cola Company, Inc., 785 Market Street, San Francisco, California."

When the letter was offered in evidence, Coca-Cola's attorney made the following objection: "I object upon the ground that it is a letter addressed to somebody else other than my client. My client is the Coca-Cola Bottling Company of San Mateo, a home grown product, and who Coca-Cola Incorporated of San Francisco is, I don't know."

After some further discussion between court and counsel, the court ruled as follows: "[T]he letter that went to some Coca-Cola Bottling Company in San Francisco, the objection to that is sustained in that there is no showing, no foundation here that it came to the attention of this defendant."

It appears that the nonsuit thereafter granted to Coca-Cola on plaintiff's cause of action against it for breach of warranty was based upon the failure of proof that Coca-Cola had received any notice of *her* claim of such breach of warranty. (Our Supreme Court had not at that time rendered its decision in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897].

On the other hand, Coca-Cola's motion for a nonsuit as against Lucky on the cross-complaint was denied on the basis of the undisputed evidence that Coca-Cola had, in fact, received *Lucky's* notice of breach of warranty, as contained in its letter of July *10*, 1959.

The action of the trial court in treating the respective notices given by Lucky and plaintiff separately is logical. Lucky had no reason to assist plaintiff in making a recovery for her injuries. That was the duty and function of her attorney. Plaintiff had returned to the store after the accident and had

demanded that she be reimbursed by Lucky for her medical expenses and for the damage to her clothes.

Lucky knew that plaintiff's claim was based upon the failure of the bottom of the carton to support the weight of the bottles. It is certainly reasonable to infer that Lucky realized that it might become liable to plaintiff. The logical purpose of Lucky's letter to Coca-Cola, enclosing a report of the accident, would be to notify Coca-Cola of the claim and that Lucky was looking to it for reimbursement in the event Lucky was held liable to plaintiff.

After the issue of warranty as between plaintiff and Coca-Cola had been eliminated by way of nonsuit, Coca-Cola's attorney stated to the court that he withdrew *all* of his proposed instructions on that issue.

Shortly thereafter, however, he stated: "I will amend my last statement where I withdrew all those instructions, and offer again—reoffer our instruction No. 24 on notice. It is a short instruction, but I think it should be given because the law does require notice and *it is up to the jury to decide the question of whether or not notice was given here.* . . . You [addressing the court] said there is evidence on the matter, but that doesn't mean the instruction shouldn't be given. . . . *It is still a jury question.*" (Italics ours.)

The court granted this request and gave the following instruction, which, by that time, had become applicable only to Lucky's cross-complaint against Coca-Cola: "You are instructed that the law of this state requires that one who sues for damages on the grounds of a breach or failure of warranty or promise, shall give the seller notice of such breach or failure within a reasonable time after the buyer knows or ought to know of such breach or failure, if any, or the seller shall not be liable to the buyer therefor."

When counsel for Coca-Cola stated to the court that "it is up to the jury to decide the question of whether or not notice was given here" and argued that the notice requirement "is still a jury question," he was in effect admitting that the evidence was sufficient to support a finding thereon either way. It is evident that he feared that the trial court was going to rule that notice had been given as a matter of law and thus leave him without an opportunity to argue the point to the jury.

He availed himself of this opportunity in his summation to the jury· as follows: "We are not the Coca-Cola Bottling Company of Oakland. We are the Coca-Cola Bottling Com-

pany of San Mateo. Any notice to them does not constitute notice to us.'' This argument suggests that Coca-Cola's counsel was well aware of the sufficiency of the *contents* of the notice but contended that the notice was ineffective because it was not correctly addressed to his client.

However, the president of Coca-Cola Bottling Company of San Mateo was well aware that the letter was intended for his company and he acted upon it in the same manner as though it had been correctly addressed. No prejudice resulted to said appellant from the few days' delay resulting from the incorrect address.

We are of the opinion that the evidence and the inferences that may reasonably be drawn therefrom amply support the jury's implied finding that notice of breach of warranty was given by Lucky to Coca-Cola in accordance with the provisions of section 1769 of the Civil Code.

 Coca-Cola next contends that there was no sale of the carton and therefore it did not carry with it an implied warranty of fitness. This contention ignores the facts and is unrealistic.

*All* of the ''king-size'' bottles sold by Coca-Cola to Lucky were contained in ''six-pack'' cartons. They were delivered in case lots of four cartons to each case. This type of carton was not just an ordinary container. It was specially designed and equipped with a handle for the purpose of enabling a customer to carry six bottles conveniently. It stimulated the sales of six bottles at a time, particularly in a self-help store such as Lucky's.

The carton was displayed in the store as a unit and was priced as a unit at 55 cents. The record does not indicate the price for a single bottle but it is true that a customer could purchase less than six bottles at a time. When this happened, the cartons were refilled by the clerks in the store so that there would always be full cartons on display and available for purchase.

No separate charge was made for the carton. It was included in the purchase price of the beverage contained in the six bottles. While a deposit of three cents was required on each bottle, no deposit was required on the carton and it was not required to be returned.

When the customer bought a ''six-pack'' he became the owner of the carton just as much as he became the owner of the beverage. The store was not ''giving'' him the carton.

It was selling him the unit for 55 cents, and this included the carton.

It is undoubtedly true that a customer could purchase six bottles and leave the carton at the store. That would be up to him. But that does not change the fact that he had the right to the carton as an integral part of his purchase.

Even Coca-Cola's president apparently considered the carton to be a part of the sale. When asked if he or his company had made any attempt to preserve the carton in question, he answered as follows: "I never had the carton after it was *sold.*" (Italics ours.) He further testified as to his company's familiarity with the custom and practice of displaying the six-pack cartons and the selling of them to the customers of the store.

We conclude that the carton carried with it an implied warranty by Coca-Cola to Lucky that it was fit for use as a receptacle in which to carry six "king-size" bottles of Coca-Cola.

Coca-Cola's remaining contention is that the evidence is insufficient to support the implied finding of the jury that the carton in question was unfit for such use at the time it was delivered by Coca-Cola to Lucky.

Plaintiff's verdict against Lucky "on the theory of breach of implied warranty" carried with it the implied finding that the carton was unfit at the time of her purchase. Coca-Cola admits that "the jury . . . correctly returned a verdict in favor of plaintiff and against Respondent [Lucky]."

Conversely, the failure of the jury to return a verdict against Lucky on the theory of negligence carries with it the implied finding that there was nothing that Lucky did or failed to do that was a proximate cause of the carton becoming unfit for its intended purpose. In short, there is nothing in the record to justify a conclusion that the carton had been tampered with in any way after its delivery by Coca-Cola to Lucky.

While Coca-Cola argued to the jury that the bottom of the carton must have become wet while at the store and that its weakened condition resulted from this cause, this was mere conjecture. The only evidence that the bottom of the carton ever got wet was that *after* the accident it was left lying in the area where the two bottles had broken and discharged their contents on the driveway.

It is true that the carton in question had been on the store

premises for at least three days. The accident happened on a Monday and the last delivery by Coca-Cola was made on the preceding Friday.

However, as stated before, all of the evidence reasonably supports the inference that the defect in the carton existed at the time it was delivered by Coca-Cola to Lucky.

Coca-Cola maintained the reserve stock in the storeroom. The evidence establishes that it was at all times kept in a dry place. The clerks in the store transferred this reserve supply to the cooler as and when needed.

Plaintiff's testimony established that nothing had occurred between the time she took the carton from a shelf in the cooler until the time of the accident which in any way changed or affected the condition of the carton. The evidence shows that the shelf from which the carton was taken is never frosted over or moist because the air in the cooler is drier than the air outside. Thus, it is reasonable to conclude that, during the time the carton was in the cooler, its condition remained the same.

We have concluded that the evidence is sufficient to support the judgment.

Coca-Cola's appeals from the orders denying its motions for a nonsuit and a directed verdict are dismissed, since these orders are nonappealable.

The judgment in favor of Lucky and against Coca-Cola and the denial of Coca-Cola's motion for judgment notwithstanding the verdict are affirmed. The judgment in favor of plaintiff and against Lucky is likewise affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

The petition of defendant, cross-defendant and appellant for a hearing by the Supreme Court was denied October 9, 1963.