**The KROGER COMPANY, Appellant,**

**v.**

**Mrs. Lorene BOWMAN and Dr. Pepper Bottling Company of Mayfield, Appellees.**

**DR. PEPPER BOTTLING COMPANY OF MAYFIELD, Appellant,**

**v.**

**Mrs. Lorene BOWMAN and the Kroger Company, Appellees.**

Court of Appeals of Kentucky.

Feb. 3, 1967.

George R. Effinger, Paducah, for The Kroger Co.

Farland Robbins, Mayfield, for Dr. Pepper Bottling Co. of Mayfield.

James G. Wheeler, Robert C. Manchester, Wheeler, Marshall & Manchester, Paducah, for Mrs. Lorene Bowman.

DAVIS, Commissioner.

Mrs. Lorene Bowman obtained verdict and judgment of $2,000 against Dr. Pepper Bottling Company (hereinafter Dr. Pepper) and The Kroger Company (hereinafter Kroger) for personal injuries she sustained when a bottle of Dr. Pepper fell from a six-pack paper carton as she attempted to remove it from a rack in Kroger's store. The trial court awarded Kroger indemnity against Dr. Pepper for any sum it should pay to Mrs. Bowman. The motions for appeal by Dr. Pepper and Kroger have been granted in separate appeals which are disposed of in this opinion.

The case was tried prior to our decision in Dealers Transport Co. v. Battery Distributing Co., Ky., 402 S.W.2d 441, wherein we adopted the rule of "strict liability" in products liability cases, but the principles enunciated in Dealers Transport govern the controversy and render inapposite much of the arguments presented in able briefs.

Mrs. Bowman was shopping in Kroger's self-service store. She undertook to place a six-pack cardboard carton of Dr. Pepper into the shopping cart. A bottle of the

beverage fell from the carton and broke on the floor; she sustained personal injuries from the flying glass. No complaint is made of the amount of the award, but both Dr. Pepper and Kroger insist that neither of them is liable for any amount.

The cardboard carton was a collapsible type, and is shown to have had a vertical split in one corner. No witness testified as to how or when the tear in the carton occurred. All litigants agree that the vertical tear was in the carton immediately after the accident. The carton is filed as an exhibit with the record on appeal; the vertical tear is a smooth one along the corner crease of the carton.

Dr. Pepper's employees delivered the merchandise to Kroger and attended to placing it upon the Kroger rack or counter. The cartons were used by Dr. Pepper as long as they appeared to be serviceable. Determination of their serviceability was made by Dr. Pepper's employees on an "eye-inspection" basis. The record indicates that the carton in question was delivered to Kroger not later than August 26th, prior to the accident on September 6th, 1961. Kroger made no claim of any inspection by its employees of the carton at any time.

Mrs. Bowman testified that she did not observe anything abnormal about the carton as she lifted it from the rack by its handle. She explained that if the tear in the carton had been on the side away from her it would not have been visible to her anyway. The nature of the defect in the carton warrants an inference that its existence would not have been readily apparent to Mrs. Bowman even had the tear been on the side of the carton nearest her when she picked it up.

Dr. Pepper and Kroger insist that a directed verdict should have gone against Mrs. Bowman. In support of this contention they urge that the doctrine of *res ipsa loquitur* is not applicable, and without that doctrine there is a failure of proof on the part of Mrs. Bowman. While admitting that this case " * * * is not to be confused with the numerous bottle explosion cases * * *" appellants rely on those cases in support of their view that *res ipsa loquitur* is inapplicable.

Our attention has been directed to Loebig's Guardian v. Coca-Cola Bottling Co., 259 Ky. 124, 81 S.W.2d 910; Rowe v. Oscar Ewing Distributing Co., Ky., 357 S.W.2d 882, and several other authorities from this and other jurisdictions, in support of the proposition that *res ipsa loquitur* is inapplicable. We do not undertake a detailed analysis of the cited authorities because we feel that there was sufficient evidence to warrant submission of the case to the jury, for the reasons now to be set forth.

Starting from the "strict liability" premise established in Dealers Transport, supra, we observe that liability is imposed upon Dr. Pepper if it sold the carton in a defective condition unreasonably dangerous to the ultimate user, and if the item was expected to and did reach the user or consumer without substantial change in the condition in which it was sold by Dr. Pepper. Dealers Transport Co. v. Battery Distributing Co., Ky., 402 S.W.2d 441, 446. Moreover, the liability exists even though Dr. Pepper has exercised all possible care in the preparation and sale of the product (assuming its original defective condition). Id., 402 S.W.2d at p. 447. It is apparent, therefore, that negligence is not the basis of "strict liability."

The *res ipsa loquitur* doctrine has evolved as a legal precept affording satisfactory evidence of *negligence*. As observed in Prosser, Torts, Sec. 39, p. 218 (3d. ed. 1964), in discussing the *res ipsa* doctrine:

"The statement of this doctrine most often quoted is that of Chief Justice Erle in 1865:

'There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servants, and the accident is such that in the ordinary course of

things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.'"

But, as noted, negligence is not the basis of "strict liability." If the purveyor of the product furnished it in a defective condition unreasonably dangerous to the ultimate user, the liability attaches without proof of negligence.

■ We turn then to examine the record with reference to evidence of the product's having been furnished in a defective condition within the "strict liability" definition. It would not be doubted, we suppose, that liability would obtain had Mrs. Bowman picked up the carton at the Dr. Pepper plant, and sustained the injuries in the same manner. Instead, Dr. Pepper placed the carton in the Kroger store; it was not inspected by Kroger, nor is there any showing that it was tampered with by anyone from the time it was placed on the Kroger rack by Dr. Pepper. In our view the circumstances thus presented are ample to warrant the reasonable inference that the carton was in a defective condition when Dr. Pepper placed it in the Kroger store. In Bell & Koch, Inc., v. Stanley, Ky., 375 S.W.2d 696, 697, it was said:

"The narrow question before us is whether the nature and circumstances of the occurrence constituted substantial evidence of negligence on the part of the defendant. The answer must be in the affirmative if an inference of fault may reasonably be drawn. The facts under consideration need only warrant the inference, not compel it. See Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815."

■ We think it is proper in the case before us to apply the same principle; not to determine whether the "nature and circumstances of the occurrence constituted substantial evidence of negligence"—but whether the nature and circumstances of

the occurrence presented substantial evidence that the carton was in a dangerously defective condition when delivered to Kroger by Dr. Pepper. In our judgment the facts in the record amply warranted submission to the jury of the issue as to whether the carton was in a dangerously defective condition when delivered to Kroger by Dr. Pepper.

The case was submitted under instructions which directed the jury: (a) To impose liability on Dr. Pepper if it found that the carton was defective when Dr. Pepper delivered it to Kroger, provided the jury further found negligence on Dr. Pepper's part in its failure to observe the defect, if any; or, (b) to impose liability on Kroger alone if the jury believed that the carton was not defective when delivered by Dr. Pepper, but became so in the store and Kroger negligently failed to learn of the defect; or (c) to impose liability upon Dr. Pepper and Kroger, jointly, if the jury believed that the carton was defective when Dr. Pepper delivered it (due to negligence of Dr. Pepper) and further believed that Kroger negligently failed to inspect and learn of the dangerous carton. It was under the latter instruction that the jury returned its verdict, imposing liability upon Dr. Pepper and Kroger. A contributory negligence instruction was given also.

■ The jury's verdict reflects its finding that the carton was defective when Dr. Pepper delivered it to Kroger, coupled with the jury's finding that Kroger failed to take proper precautions to guard against that defect after the carton had been delivered to it. The requirement for a finding of negligence was more favorable to Dr. Pepper and Kroger than warranted under the "strict liability" doctrine. Our conclusion here comports with Allen v. Coca-Cola Bottling Co., Ky., 403 S.W.2d 20, 21, and Rogers v. Karem, Ky., 405 S.W.2d 741.

■ It was proper for the trial court to award Kroger indemnity against Dr. Pepper. Although Kroger was liable to Mrs. Bowman, it is not precluded from in-

demnity against Dr. Pepper. The principles of Brown Hotel Co. v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165, are governing here. Dr. Pepper furnished the defective carton; Kroger owed no duty to Dr. Pepper in the matter of seeing to it that the carton was safe, even though it did owe a duty to its own customer, Mrs. Bowman. So the failure of Kroger to protect Mrs. Bowman may not be used as a means of insulating Dr. Pepper from its primary liability.

The judgment is affirmed.

OSBORNE, Judge (dissenting).

I dissent from the majority opinion in this case for reasons to be hereinafter set out and I further believe it was a mistake when this Court in the case of Dealers Transport Company v. Battery Distributing Company, Ky., 402 S.W.2d 441, abandoned the settled law of this state as it relates to the negligence of one involved in the sale and distribution of consumer products and substituted for that law a doctrine known as "strict liability" or "manufacturers liability." The doctrine of "strict liability" in the sale and distribution of consumer products has had an interesting and controversial history in this country. Prior to the advent of this rule, manufacturers and distributors of consumer products were liable to their users only where there was a defect in the product caused by negligence in the processing or manufacture of it or where the product was not suitable for the purpose for which it was sold (warranty). The first departure from this rule was in cases involving food products. However, in the '50's some few courts in the United States began to apply the doctrine to other products, mostly those intended for intimate bodily use, such as, soap, hair dye, detergents, clothing, cigarettes, vaccines and surgical supplies. As of now only California, New York, Illinois and a few other states have gone beyond applying the doctrine to any but items for personal use. Professor William L. Prosser, who has been one of the strong advocates of the rule, concedes that it has some strict limitations to its applicability. See Law of Torts, 3rd Ed., by William L. Prosser, page 682:

"So far as the plaintiff is concerned, no one has yet recovered for personal injuries, on the basis of strict liability without privity, who could not fairly be called a consumer of the product, or at least a user. A customer in a beauty shop has recovered when her hair was treated with the defendant's dye, and so has a housewife who contracted tularemia while preparing rabbits for cooking, as well as passengers in automobiles and airplanes. Members of the family of the final purchaser, and his employees, guests, and donees who consume or use the goods have been allowed to recover. But others, who have come in contact with the product and been injured by it, without consumption or use, as in the case of the pedestrian hit by an automobile, or the bystander injured by the exploding beer bottle, have thus far been denied recovery. The explanation appears to lie in the fact that these are not the people whom the seller is seeking to reach with his goods, and they do not have the same reason to rely upon any implied assurance of safety; and that the social pressure and public opinion which have been responsible for the change in the law have centered about the consumer, rather than the stranger.

"The 'warranty,' when it is found, is clearly one of merchantable quality, rather than of fitness for the buyer's special purpose, and there is no strict liability unless the product was in some way defective when it was sold by the defendant.

"Notwithstanding a rather unclear Florida decision looking to the contrary, it seems fairly clear there is no liability if a standard product is sold, of the kind customarily on the market, and that cigarettes, whiskey, or butter do not become a matter of strict liability merely because they are known to cause lung cancer, alcoholism,

or heart attacks. Nor, in all probability, is there any breach of warranty when an experimental product, as for example a drug which is known to be unsafe, is sold, so long as there is appropriate warning to the buyer.

"The strict liability does not relieve the plaintiff of the necessity of sustaining his burden of proof, first of all that the injury he has suffered was caused by a defect in the product, and second, that the defect existed when the product left the hands of the defendant."

From the above, we see that where the doctrine is applied, the plaintiff carries the burden and must show:

1. Privity—that is by the purchaser or the one intended to be reached by the product.

2. Defective quality—not merely deficient for the consumers use.

3. That the defect existed when the product was sold by the distributor or manufacturer.

· 4. That the product differs from other standard products on the market.

5. Sustain the burden of proof that the injury was caused by the defect in the product and that the defect existed when the product left the hands of the defendant in the action.

One of the better law review articles úpon this subject can be found in 24 Tennessee Law Review 938. There, Professor Marcus L. Plant details the source of "strict liability" doctrine and the social philosophy behind it. In pointing to some of the arguments in support of the rule, Professor Plant writes:

"The most cogent argument for strict liability from a judicial source is that propounded by Justice Roger J. Traynor of the Supreme Court of California. In 1944, in Escola v. Coca-Cola Bottling Company of Fresno, in a concurring opinion he stated frankly: 'In my opinion it should not be recognized that a manufacturer incurs an absolute liability when an article that he has placed on the market, knowing that it is to be used without inspection, proves to have a defect that causes injury to human beings.' He follows this statement with a thoroughly annotated discussion of the policy reasons for his conclusion. Justice Traynor has advised the writer that he still adheres to this view. It should be noted that his recommendation is a limited one. Strict liability is to be applied only to a manufacturer whose product is intended for use without further inspection. This would limit the rule for the most part to assemblers of finished products and would not place the same burden on parts manufacturers. Thus the manufacturer of the wheel in McPherson v. Buick Motor Company could not have been· held strictly liable under this rule. It would also limit the rule to a case of personal injury as contrasted with property damage for it requires 'injury to human beings.' Thus, it would. mean strict liability in the *Continental Motors Corporation* case cited at the outset, for that involved only damage to the airplane. Even with these limitations the doctrine he suggests has not been adopted.

It seems clear from the foregoing that an advocate of strict liability for manufacturers cannot base his proposal upon any substantial existing trend in judicial thinking. This is not a situation in which it can be claimed that 'we ought to recognize what the courts are actually doing.' On the contrary the proposal is one which runs counter to the mass of current authority. * * *

"It should be recognized immediately that if this is the motivation for adoption of the rule, its proponents are not primarily concerned with the question of what constitutes justice for the manufacturer. Their principal concern is with what is sometimes euphemistically called 'social engineering,' which frequently turns out to be crass expediency seeking its ends without any particular regard for basic principles. In this instance they ask the manufacturer to as-

sume the burden and pass it on simply because they consider him to be in a position to do so. But if this approach is sound, why should we not carry the process still further? If the manufacturer can pass on to society the cost of all injuries arising from product defects, why should he not also be required to pass on to society the losses arising from all other injuries incurred in the course of manufacturing activity? For example, suppose an automobile manufacturer has a delivery truck which carries motors from one plant to another, and that this truck, while being operated with due care, injures a pedestrian. Isn't this as much a 'cost of production' element as an injury arising from a product defect? Ought we not to hold that manufacturer strictly liable for that injury and respond to his protests with the easy answer that he should charge a price for his product which will take into account that a certain number of such injuries are inevitably going to occur because of his industrial activity? If this general policy is expedient for injuries arising from product defects, it is equally expedient for any others. Yet it has not been argued persuasively that such a policy should be followed. * * *

"If the imposition of strict liability for product defects is to be founded on the expediency and desirability of distributing or (pardon the expression!) socializing loss over the general consuming public, would it not be a more honest course and would it not be more economically and socially desirable, frankly to establish a governmental mechanism through which such losses could be fairly distributed through taxation? The writer does not advocate such a step, but it is preferable to adoption of a legal doctrine which seeks to accomplish the same result by throwing this burden on manufacturers in general where its incidence will be determined by chance or by unsystematic and capricious factors. It is dubious social policy to single out a particular group in society and make its members or some of its members bear the cost of what may be a very commendable

reform, while everyone else in society operates under an entirely different legal doctrine and philosophy."

The foregoing, in a rather pointed manner, directs our attention to some of the problems which we should face and give due consideration before whole-heartedly adopting this doctrine and making it a part of the law of this state, as was done in the *Dealers Transport* case. There are two sides to the question and I am afraid we have taken one and closed ourselves off from a fair view of the other. The clash of principles here involved is most ably put by Seavy in the following terms:

" 'In determining whether there is tort liability when harm has been caused, the focal point of conflict has been whether one should be liable for harm irrespective of fault. The law has been in a state of flux in its desire to protect two basic interests of individuals—the interest in security and the interest in freedom of action. The protection of the first requires that a person who has been harmed as a result of the activity of another should be compensated by the other irrespective of his fault; the protection of the second requires that a person who harms another should be required to compensate the other only when his activity was intentionally wrongful or indicated an undue lack of consideration for the interests of others. At any given time and place the law is the resultant derived from the competition between these two basic concepts.' The ultimate decision of the issue considered in this paper will depend on which of these two concepts is accepted." Seavy, Principles of Torts, 56 Harv.L.Rev. 73 (1942).

Where the doctrine is applied, it is usually limited to those articles ordinarily used upon the person or consumed by the individual. Recovery is limited to the intended user and denied to strangers. Recovery can only be had when there is a defect proven to have existed at the time of delivery. Recovery can only be had for personal injury, not property damages.

In *Dealers Transport*, this court, in one broad sweep, managed to violate all of the established rules. The doctrine was applied in a commercial transaction between a trucking firm and a jobber in bottled gas. The bottles involved, and which were the subject of the litigation, had been upon the premises of the plaintiff for an extended period of time and there was no proof whatsoever in the record of a defect existing at the time of delivery. (This fact was assumed by the court.) The doctrine was applied to a non-personal item and recovery was allowed for property damages. In view of the above, it becomes painfully apparent that had this court been given another opportunity to subvert the well-settled principles restricting this doctrine, it surely would have done so. Now that we understand the principles with which we are dealing, let us turn our hand to the present case. Here the plaintiff entered the defendant's store and removed a six-pack of cold drinks from a rack where it was resting. In the process of placing it in her cart, one of the bottles fell to the floor and broke. The shattering glass cut her foot. After the accident, it was found that the carton was torn at one corner. This court then applies the magic formula of "strict liability," repeats the sacred words first adopted in *Dealers Transport*, and ipso facto, judgment for the plaintiff. No examination of the facts, no bother with the legal principles, no thought of common justice—just find against the store owner, for he can in turn pass it on to the customer. The plaintiff gains and all the rest of society loses.

This case is not unique upon its facts. There have been several others practically identical in their factual situations in other jurisdictions. Several of these are reported in 81 A.L.R.2d 326, all of which we will review.

"In Behringer v. William Gretz Brewing Co. (1961, Del) [3 Storey 365] 169 A2d 249, the evidence was held not to establish the liability of defendant beer distributor for injury from the collapse of a cardboard beer bottle carrier. The court said that there was no showing of a negligent failure to inspect the carrier for defects, or that defendant used a defective or inadequately constructed carrier, or that defendant was guilty of a negligent failure to warn that the carrier might collapse.

"Plaintiff in Beck v. United States Fidelity & Guaranty Co. (1954, La App) 76 So 2d 120, sought damages for injuries sustained by his wife, where, while she was shopping in a grocery store when a store employee was stacking 6-bottle cartons of Coca-Cola, one of the bottles in some manner became dislodged from a carton, fell to the floor and was shattered, and a piece of glass from the shattered bottle entered the wife's eye. Plaintiff sought recovery from a Coca-Cola company on the ground that the pasteboard carton containing the bottle which broke was either torn or deteriorated to such an extent that the bottle dropped to the floor as the carton was being lifted by the grocery store employee. Affirming a judgment denying recovery as against this defendant, the court pointed out that the grocery store manager who, following the accident, saw the carton which had contained the bottle which broke, failed to include in his testimony any reference to the condition of the carton, and the carton, which was in the possession and custody of the grocery store employee, was not produced at the trial. In light of these observations, the court said, it was persuaded that the defendant bottling company was free from liability.

"Rockwell v. Queen City Bottling Co. (1943) 73 Ohio App 42, 28 Ohio Ops 86, 39 Ohio L Abs 452, 53 NE2d 528, was an action against a bottler and distributor of soft drinks for injuries sustained by one who purchased six bottles of a soft drink bottled and distributed by defendant in a pasteboard carton which defendant furnished; while plaintiff was carrying the carton it collapsed, and the bottles fell and were broken, and plaintiff was struck by flying glass. The court, affirming a judgment in defendant's favor, said that plain-

tiff alleged and offered to prove merely that defendant put the carton in circulation, and it collapsed while out of defendant's possession and beyond defendant's control, mentioning no act or omission to act of defendant in connection therewith and leaving to utter speculation what did or did not happen to the carton after it was placed in the hands of the retailer from whom plaintiff purchased it. The court said that these facts failed to make out a cause of action for breach of an implied warranty as to fitness for a particular use, or an ordinary negligence case, and, it was added, if the 'so-called cursory inspection (of the cartons)' by defendant amounted to negligence, 'there is an utter lack of any causal connection. between that and its being the proximate cause of the injuries here.'

"Robey v. Richmond Coca-Cola Bottling Works (1951) 192 Va 192, 64 SE2d 723, was an action for injuries sustained when plaintiff purchased a carton of six bottles of Coca-Cola produced by the defendant, at a retail grocer's and, while she was carrying the carton in her hand, the end or bottom of the carton broke, three bottles of Coca-Cola fell to the pavement and burst, and plaintiff's foot was cut by flying glass. Plaintiff, having introduced testimony that the carton in question was worn and damaged, contended that a jury question was made out as to whether defendant had been negligent, that is, whether the carton contained a defect which was discoverable by defendant in the exercise of ordinary care or by reasonable inspection. The court, affirming a judgment in defendant's favor, held that plaintiff had failed to show that defendant was guilty of negligence which was the proximate cause of the accident and of plaintiff's injuries. It was pointed out that the gist of plaintiff's case was that the carton was worn and defective from previous use when it left defendant's possession and was placed in the retailer's store, and that such defect could or should have been discovered by a reasonable inspection before committing the carton to reuse, and that a proper inspection was not made; but,

it was said, this argument assumed the very factors which plaintiff was required to prove, there being no presumption that the carton was defective when it left defendant's possession and no evidence that it was. Moreover, the court said, as to the alleged lack of inspection, the only evidence on the subject was that all cartons were inspected by defendant before reuse, and only those found to be in good condition were re-employed. The court commented that there was no duty on defendant to inspect the carton after the bottled product had been sold and delivered to retailers who thereafter had exclusive control of it until they sold it to plaintiff.

"Plaintiff in Cunningham v Parkersburg Coca-Cola Bottling Co. (1953) 137 W Va 827, 74 SE2d 409, sought damages for injuries sustained when, while she was removing a cardboard carton of six bottles of Coca-Cola from a rack in the store in which she was employed, the bottom of the carton fell out and some of the bottles fell to the floor and burst. It appeared that the carton in question had been placed in the rack by defendant's employee, but no one testified as to the condition of the carton in question at the time of its delivery to the store, or at any time before the injury; there was nothing to show how long the particular carton had remained in the store, except that it had been there not less than three days. Reversing a judgment in plaintiff's favor, the court held the evidence insufficient to warrant the conclusion that defendant's negligence was the proximate cause of plaintiff's injury. It was pointed out that, at most, the evidence established that the paper carton from which the bottles fell was defective at the time plaintiff lifted it from the metal rack, and, it was said, there was ample opportunity for customers in the store to have created the condition which caused the carton to become defective. The court also held the res ipsa loquitur doctrine inapplicable, pointing out that the evidence showed that an opportunity existed for negligence affecting the carton, on the part of persons other than

defendant, and, moreover, the carton was not under the exclusive control of the defendant at the time of the injury. The court stated further that actionable negligence on the part of defendant could not be inferred from facts establishing only that defendant sold and delivered for resale, and placed upon a rack furnished by defendant to the retail store for display purposes. Coca-Cola in paper carton packs containing six bottles each, that the cartons were of the type generally used in the trade, and that customers of the retail store sometimes handled the packs."

In Phillips v. Pepsi-Cola Bottling Company, 256 N.C. 728, 125 S.E.2d 30, which is a North Carolina case, the plaintiff purchased six Pepsi-Colas in a carton, which had a handle on it. She carried the carton in her right hand and some ice cream in a paper bag in her other hand. She had carried this load some distance from the store when she heard something like a shot, and felt pain in her leg. The decision of the court affirming a motion to dismiss a complaint reads as follows:

"The complaint is seemingly bottomed on the theory that defendants have negligently failed to perform a duty owing to plaintiff. Manifestly plaintiff's testimony is insufficient to establish negligence unless the mere fall of the bottle from the container brings into play the doctrine of res ipsa loquitur, imposing on defendants the duty of explaining how and why the bottle fell. 'For the doctrine to apply the plaintiff must prove (1) that there was an injury, (2) that the occurrence causing the injury is one which ordinarily doesn't happen without negligence on someone's part, (3) that the instrumentality which caused the injury was under the exclusive control and management of the defendant.' Jackson v. Neill McKay Gin Co., 255 N.C. 194, 120 S.E.2d 540. 'There is no presumption of negligence from the mere fact that there has been an accident and an injury.' Brewer v. Green, 254 N.C. 615, 119 S.E.2d 610. The breaking or explosion of a bottled drink in the possession of the injured party

is not sufficient to create a prima facie case of negligence. Styers v. Winston Coca-Cola Bottling Co., 239 N.C. 504, 80 S.E.2d 253; Enloe v. Charlotte Coca-Cola Bottling Co., 208 N.C. 305, 180 S.E. 582; Lamb v. Boyles, 192 N.C. 542, 135 S.E. 464, 49 A.L.R. 589; Dail v. Taylor, 151 N.C. 284, 66 S.E. 135, 28 L.R.A.,N.S., 949.

"Plaintiff argues here that she is entitled to recover from the defendants upon an implied warranty that the carton which she used to transport the bottled drinks was in fact fit for that purpose. There is no evidence as to the kind of container. Was it metal or wood or paper? It is common knowledge that bottled drinks of the kind purchased by plaintiff are frequently put in paper or cardboard containers for convenience in transportation. If it be assumed that the container which plaintiff used was of that character, the evidence is still devoid of any explanation as to why the bottle fell. True, plaintiff alleges that it fell because of a 'rotten bottom.' But there is nothing to establish that fact, nor is there anything to explain why the bottom, if rotten, was in that condition. There is evidence by one of plaintiff's witnesses that the bottled drinks were taken from an icebox and put in the container.

"The fact that a bottle fell to the pavement from a container which plaintiff was handling is no more sufficient to establish breach of a warranty as to the condition of the container than it is to establish negligence in the manufacture. Prince v. Smith, 254 N.C. 768, 119 S.E.2d 923. Affirmed."

With the exception of one California case, Faucette v. Lucky Stores, Inc., from the district court of California, 219 Cal. App.2d 196, 33 Cal.Rptr. 215, I have not found a case in any other state wherein a plaintiff recovered under a factual situation such as the one shown in this case. The doctrine of liability without fault runs against the grain of Anglo-American Jurisprudence and whatever other reasons

there may be for its adoption, they certainly cannot be legal in the sense that Judges and Lawyers are trained to interpret this term. Judge Augustus N. Hand in looking at this concept in Valeri v. Pullman Co., D.C., 218 F. 519 had this to say:

"Of one thing I feel reasonably clear, that no such obligation was ever imposed upon innkeepers or victualers under the English common law. In spite of the most exhaustive briefs of counsel in this case, no decision of the English courts has been pointed out, indicating the existence of such an obligation, and it seems to me most unlikely that such an obligation was ever recognized in the common law, using that word now in a historical sense, or it would have been enforced in numerous adjudicated cases. The opportunity for actions involving the breach of such an obligation has been far too common, and the absolute liability long imposed upon an innkeeper in respect to the goods of his guests has furnished too close an analogy to such an obligation, to permit the innkeeper to escape if the obligation had ever been thought to exist at common law.

"The courts have enforced certain rules of absolute liability in the case of innkeepers, common carriers, owners of vicious animals, manufacturers of poisonous drugs, and in England, under the doctrine enunciated in Rylands v. Fletcher, 3 H.L. 330, in the case of persons who bring upon their lands elements likely to do mischief if they should escape.

"My own feeling is that protection to the public lies not so much in extending the absolute liability of individuals, as in regulating lines of business in which the public has a particular interest in such a way as reasonably to insure its safety. In other words, pure food laws, and rigorous inspection of meats, canning factories, and other sources of food supply, would seem to be a much more effective way of protecting the public than by the imposition of the liability of an insurer upon those who furnish food. The former method corrects the evil at its source. The latter method only imposes an obligation in cases which ex hypothesi cannot be guarded against by the individual by the exercise of due care. It shifts the loss from the person immediately suffering the injury to a person who has neglected no precaution in supplying the food. This certainly is not in accord with the general tendencies of the common law. I am inclined to think that the imposition of such an obligation would tend to lead in the long run to the prosecution of unfounded claims, rather than to the protection of individuals or the public."

It is my opinion that we went far too far in the case of *Dealers Transport* in the adoption of the doctrine of "strict liability" and that we are further compounding the mistake in this case. For these reasons, I dissent.