FORD MOTOR COMPANY, Appellant,

v.

Alice V. ZIPPER et al., Appellees.

Court of Appeals of Kentucky.

Nov. 23, 1973.

John P. Sandidge, Richard I. McIntosh, Woodward, Hobson & Fulton, Louisville, for appellant.

Charles Morris Leibson, Gary Weiss, Leibson & Leibson, Charles S. Cassis, Marshall, Cochran, Heyburn & Wells, Ben J. Talbott, Jr., Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellees.

REED, Justice.

This is a products liability case in which the appellant, Ford Motor Company, the manufacturer of an automobile involved in a collision, was held responsible for personal injuries and property damage sustained in the accident. The case was tried by a jury and the trial judge entered judgment in accordance with the jury verdict. Ford appeals and contends that it was entitled to a directed verdict on the issue of liability and, in any event, prejudicial errors were committed at the trial by reason of which a new trial should be ordered. We hold that Ford's liability was properly submitted to the jury and that its substantial rights were not affected by the trial court rulings to which complaint is directed. We affirm the judgment for the reasons stated later in this opinion.

The appellee, Alice Zipper, was operating her automobile in April 1967, in Louisville, Kentucky. While her automobile was stopped preparing to make a left turn into a restaurant, it was struck in the rear by an automobile owned and operated by appellee, George L. Siebe. Siebe's automobile, a 1967 Ford Fairlane, had been purchased by him about 8 months before the accident from appellee Burns Ford, Inc., a Louisville Ford dealer.

Appellee Zipper sued Ford, the manufacturer; Burns, the retailer; and Siebe, the owner of the Ford automobile. Siebe cross-claimed against Ford and Burns. Burns claimed indemnity from Ford. Siebe also sought damages from Burns and Ford for his property damage and loss of use in the total amount of $1,430. The jury found that the accident was caused solely by a defective part in Siebe's automobile. The jury's verdict awarded Mrs. Zipper $12,266 for personal injuries against Burns and Ford. The jury also found in favor of Siebe against Burns and Ford for his property damage and loss of use. The jury also awarded a verdict in favor of Burns against Ford for the total amount rendered against Burns. In accordance with the verdict, judgment was entered for $12,266 in favor of Mrs. Zipper and for $1,430 in favor of Siebe, and it was further adjudged that Ford bear ultimate responsibility for the payment of these claims aggregating $13,696.

Siebe claimed that the accident was caused by the failure of his brakes, which he alleged were in a defective condition when manufactured by Ford and remained in that condition when the automobile was purchased from Burns. According to Siebe, he was traveling at approximately 30 miles per hour before the collision. He saw the Zipper automobile stop with its turn signal on and applied his brakes. He stated that he had had no trouble with the brakes prior to the time of the accident but when he applied them on this occasion, the power brake pedal, which was low to the floor, gave a little resistance and went all the way to the floor. He also said that he was unable to get into the other lane in order to avoid the collision due to the presence of another automobile, and that he was not able to brake by using the parking brake before making contact with the Zipper automobile.

The first item presented for consideration is whether a submissible jury issue concerning Ford's liability was presented. We have adopted the doctrine of strict liability of manufacturers declared in Section 402(a) of the Restatement of Torts, Second. The quantum of proof necessary to make a submissible jury issue concerning the manufacturer's liability has been considered in several late cases. The later cases considering alleged defects in auto-

mobiles chargeable to the manufacturer are Briner v. General Motors Corporation, Ky., 461 S.W.2d 99 (1970), and Midwestern V. W. Corporation et al. v. Ringley, Ky., 503 S.W.2d 745 (decided June 15, 1973). In the case at bar, there was testimony from a qualified expert that there were three defects in the brake linkage of Siebe's automobile at the time it left the manufacturer: (a) the center hole in the linkage was 1/16 of an inch off center from the side; (b) the hole in the linkage had no chamfer on it; (c) the hole in the linkage was oversized in relation to the pin that fit through it. This expert also testified that there was no visible defect or damage to any other part of the brake assembly nor were there any marks of impact or damage on the vacuum booster assembly, which would indicate that the linkage was broken by the impact of the two cars.

█ This expert's testimony was clearly to the effect that the cause of the brake failure was a defectively manufactured brake linkage. Unlike equivocal evidence on causation in the Ringley case, this expert's testimony demonstrated defectively manufactured brake linkage was more likely than not the cause of the accident in his opinion. Although Ford presented contrary expert evidence to the effect that the linkage did not cause the accident, we conclude that the expert evidence on behalf of the appellee was completely sufficient to permit a jury to find that a defectively made linkage caused the brake failure. The requirements of Section 402(a) of the Restatement of Torts, Second, for submissibility to the jury were satisfied.

Ford complains that the trial court prejudicially erred in that it excluded the evidence of Ford's expert. The record does not bear out the assertion. Ford presented the evidence of one of its employees, John Klecha, who was qualified and testified as an expert. Klecha undertook to ascribe the brake failure to causes other than defective manufacture. On direct examination, Klecha attempted to explain an exper-

iment, which he performed at Dearborn, Michigan, at Ford's central laboratory. Klecha testified that he obtained a similar vacuum booster with a similar linkage attached and carried out an experiment to find out what load the linkage would carry before fracturing.

An objection was interposed when Klecha was asked what conclusion he had obtained from the experiment. The objection was based on the use of the word "similar" to describe the parts used in the experiment. Klecha explained that he tested this similar linkage for hardness of the metal and determined that it was not as strong as the metal in the linkage taken from Siebe's automobile. He then continued to describe the experiment.

In this description he used an illustrative device, the booster, but after giving his explanation he was asked again the result of his experiment, and another objection was interposed which the trial court sustained stating that there had been no showing that the parts used in the experiment came from the same batch of material as that used in the Siebe automobile. Klecha gave additional testimony in chambers, and during his avowal appearance he stated that it was his conclusion that it took 2,090 pounds of pressure (load) to break the linkage used in his test.

█ When trial resumed in open court before the jury, Klecha was again asked about the amount of pressure required to lock the wheels of the 1967 Ford Fairlane, and he replied: "40 to 50 pounds or 700 to 800 p. s. i."; then he was asked what amount of pressure was required to break the levers and he answered, "about 2100 pounds." From this record it is perfectly apparent that, with the exception of the part itself that was used and broken in Klecha's experiment, all of the information concerning the experiment was heard by the jury. We find no error affecting Ford's substantial rights so far as the presentation of its expert evidence was concerned.

Ford's next complaint concerns limitations placed by the trial court upon the cross-examination of Mrs. Zipper. Mrs. Zipper testified that she had been involved in two additional rear-end automobile collisions, one two years before the 1967 accident, which is the subject of this lawsuit, and another in 1970. As a result of the 1965 accident, she was treated for back and neck injuries by Dr. Allen Zoeller and Dr. George Nichols. Ford was allowed to cross-examine concerning the medical history of Mrs. Zipper with reference to previous back injuries, nervous conditions and the like. She claimed that her nerves gave her a problem as a result of the accident in which Siebe's automobile struck her.

On cross-examination, Ford was able to elicit the admission from her that she had had nervous problems dating back to 1958, but her testimony was that she had recovered and then her nervous condition had worsened after the Siebe accident. Mrs. Zipper also admitted that she had sustained permanent injuries as a result of her 1965 accident and that on this occasion she received injury to her back and neck in the identical area to that of which she complained as a result of the Siebe incident. Ford's attorney then undertook to cross-examine Mrs. Zipper concerning her admission in 1968 and in 1969 to a hospital for female problems.

■ The trial judge ascertained by his questioning of her that those visits had nothing to do with her neck, back or arm, and directed in response to her attorney's objection that Ford's counsel should not ask any more questions concerning the hospital visits. There is an extensive annotation in 69 A.L.R.2d at 593 on the proper scope of cross-examination of a plaintiff in a personal injury action as to his previous injuries, physical condition, claims or actions. The matter of the scope and extent of cross-examination in such instances is generally left to the discretion of the trial judge.

■ It would appear in this instance that the evidence had a tendency to show that the nervous condition claimed to be the result of the 1967 accident more probably was the result of a condition for which the defendant would not be liable, hence it could be regarded as relevant. Nevertheless, evidence, although relevant, may be excluded if its probative value is substantially outweighed by considerations of waste of time or needless presentation of cumulative evidence, particularly in a setting calculated to be embarrassing to the witness.

■ The witness had freely admitted prior and subsequent injuries and had frankly admitted nervous problems as a result of them. The jury had the picture. We cannot say that this relatively insignificant exclusion of events so affected a substantial right that we can call the trial judge's discretionary limitation on cross-examination a prejudicial error.

■ Ford also contends that the trial judge erred when he refused to allow Ford to show the amount paid in settlement of a prior lawsuit filed by Mrs. Zipper resulting from her accident in 1965, and to introduce and read to the jury a paragraph contained in a complaint prepared and filed by her attorney. In the first place, nonverified or unsigned pleadings by a party are not generally regarded as competent evidence of an admission or confession against the party on whose behalf such pleadings are drafted. See Jackson v. Schine Lexington Corporation, 305 Ky. 823, 205 S.W.2d 1013, 1014 (1947). More importantly, however, the paragraph of the complaint that Ford wanted read to the jury was merely cumulative evidence and did not further prove anything that was not already in issue. The amount paid in the prior settlement ($6,000) bore a very tenuous connection with the issue on trial. The jury was well aware by reason of Mrs. Zipper's testimony and other evidence that she claimed permanent injury as a result of her 1965

accident. The exclusion from the evidence of the contents of the complaint and the amount of settlement paid in the prior action, in our view, did not affect Ford's substantial rights.

■ Dr. Zoeller, Mrs. Zipper's treating physician, in a deposition in the suit arising out of the 1965 accident, testified that she received permanent disability consisting of intermittent neck and back pain and stiffness with radiating pain in her arms and legs. When Dr. Zoeller's deposition was taken regarding the 1967 accident, he testified that there was aggravation of the pre-existing, permanent injury and some additional injury to ligaments. Ford claims error in not being allowed to introduce Zoeller's deposition given in the 1965 accident case. The deposition of Zoeller in the 1965 case does not contradict his evidence given in the case on trial. Again we find that Ford was allowed to develop its defense that Mrs. Zipper's damages for personal injury were not attributable to the Siebe incident. The trial court merely excluded evidence that was noncontradictory and essentially cumulative. We cannot say the trial judge abused his discretion in this regard.

■ Ford claims that the trial court incorrectly admonished the jury concerning the effect of the introduction of a life-expectancy table. The record shows that the trial court attempted to comply with Ford's counsel's request for an amplified admonition and Ford made no further objection. The error, if any, was not preserved for appellate review.

■ Ford also complains that the trial judge should have not have given an instruction on permanent injury. In the cases cited in support of this contention, there was an absence of medical evidence to support a finding that the injury was permanent. In the case at bar we are presented ample medical proof that the superimposed injuries which aggravated the previous condition are permanent. We are not confronted with an injury that ordinarily cannot affect the power to earn money. The trial judge did not err in including an instruction on permanent injury. Cf. Rogers v. Sullivan, Ky., 410 S.W.2d 624 (1966).

■ Ford attacks the jury instruction that the trial judge gave concerning the effect of pre-existing conditions as they might affect the extent of damages recoverable. We have examined this instruction and find that it adequately presented the applicable law governing the situation. Mrs. Zipper was entitled to receive compensation only for damages caused directly by the injuries received in the Siebe accident. In the case at bar the trial judge instructed the jury not to award damages for any pre-existing condition except to the extent that it was aggravated "if at all." There was no substantial error in the wording of his instruction.

Ford's final contention is that the trial court erred when it refused to allow Ford's attorney to examine Mrs. Zipper's expert, who had examined the brake linkage, concerning his impressions, opinions and conclusions about which he would testify at trial. The law applicable to discovery of the opinion of an expert at the time of the trial of this case was stated in Ford Motor Company v. Angelucci, Ky., 455 S.W.2d 528 (1970).

In Angelucci, this court held that Ford was correct in its contention that one of its employee-experts was not required to produce written reports for inspection by the plaintiff in a civil action insofar as his impressions, conclusions or opinions were concerned under CR 37.02,[1] which pertains to the production of writings and documents. Ford argues, however, that this should not have precluded it from proceeding to secure the same information by taking Mrs. Zipper's expert's deposition under CR 26.02.[1] We disagree.

I. As it existed before the revised discovery rules were adopted effective October 1, 1971.

At the time of the trial of this action, in our view, a party did not have the right under the then CR 26.02, or the then CR 34, to obtain the impressions, opinions or conclusions of an expert upon pretrial discovery. What the answer would be today under the revised discovery rules effective October 1, 1971, we need not decide.

The judgment is affirmed.

All concur.

OSBORNE, J., files separate concurring opinion.

OSBORNE, Justice (concurring).

I concur in the opinion of the court here as I believe we have corrected most of the defects which I found to exist in this court's use of the Doctrine of Strict Liability in Kroger Co. v. Bowman, Ky., 411 S.W.2d 339.

In the case before us it would appear the plaintiff has met the burden of showing:

1. Privity—that is by the purchaser or the one intended to be reached by the product.

2. Defective quality—not merely deficient for the consumer's use.

3. That the defect existed when the product was sold by the distributor or manufacturer.

4. That the product differs from other standard products on the market.

5. That the injury was caused by the defect in the product and that the defect existed when the product left the hands of the defendant in the action.

The foregoing sufficiently distinguishes the Bowman case, supra, therefore I concur.